**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Akramov Bekzodjon Sobirovich,<br>Petitioner<br>-vs-<br>Unknown Party, et al.,<br>Respondents. | CV-26-2303-PHX-MTL (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I.  MATTER UNDER CONSIDERATION

Petitioner has filed *pro se* a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) challenging his ongoing detention pending removal.  The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are largely undisputed, although largely undocumented. Petitioner is native and citizen of Uzbekistan.  In  December 2021 Petitioner filed for admission from Mexico at the San Ysidro Port of Entry.  He was detained for approximately one month but applied for asylum and on January 24, 2022 was granted discretionary parole into the United States under 8 U.S.C. § 1182(d)(5), and was authorized to work.  In September 2025 he received a credible fear determination.

Petitioner was subsequently detained on September 15, 2025 and his asylum application was eventually denied and he was ordered removed.  On April 20, 2026 he filed a notice of appeal with the Board of Immigration Appeals.  He has been denied an

- 1 -

individualized bond hearing, and asserts he has no criminal history and is neither a flight risk or danger to the community.  He remains in custody.[1]

Petitioner asserts he suffers kidney related health issues.

Petitioner's Petition (Doc. 1) challenges his detention without a bond hearing is prolonged and unreasonable, he is not a danger or flight risk, and thus his rights under the Due Process clause of the Fifth Amendment have been violated.

Respondents argue (Doc. 10) that as an arriving alien, Petitioner has no rights to release under the Constitution beyond those provided by statute, and that he has no rights to release under the applicable statute, 8 U.S.C. § 1225.

Petitioner replies that the conditions of his confinement have worsened since his transfer to the Central Arizona Florence Correctional Complex, which is a prison like environment, and that his health has worsened.  He asserts that the food and health care provided is inadequate and unseasoned, and that he is constantly hungry.

### III.  APPLICATION OF LAW TO FACTS
### A.  DETENTION REQUIRED BY STATUTE

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court summarized the pre-removal detention statutes:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).

583 U.S. at 289.  The detention statute provides:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding

---

[1] Petitioner asserts he filed a previous habeas petition challenging his detention, but it was responded to and dismissed without notice, denying his rights. (Declaration , Doc. 2 at ¶¶ 9-11.)  A habeas petition was filed on February 17, 2026 in *Akramov v. Unknown Party*, CV-26-1112-PHX-JJT-JZB, and dismissed on screening on February 20, 2026 on the basis that the Petition reflected a failure to exhaust administrative remedies in light of his then scheduled bond hearing before and immigration judge.  Any denial of due process in that judicial case would not provide a basis for relief in this case.

8 U.S.C. § 1225(b)(2)(A).

The *Jennings* Court summarized:

> That process of [deciding who may enter and/or stay in the country] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under [ ] 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2).
> * * *
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid*.

*Jennings*, 583 U.S. at 287-288. Thus, any parole from detention under § 1225 arises only under § 1182(d)(5) under the discretion of the Secretary. Petitioner was granted such parole, but it was terminated. (Petitioner mounts no challenge to the basis for the termination.) On such termination, Petitioner remains subject to detention under § 1225.

## B. LIMITED CONSTITUTIONAL RIGHTS

In *Shaughnessy v. United States ex rel. Mezei*, the petitioning alien had (after a period of residence) left the United States and spent more than 18 months "behind the iron curtain" before attempting to return to the U.S. The Court found he was not challenging his exclusion, just his continued detention on Ellis Island because other countries would not take him. 345 U.S. 206, 207 (1953). The *Mezei* Court quoted *Knauff* for the proposition that while aliens who had already "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in the due process of law...But an alien on the threshold of initial entry stands

- 3 -

on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry to the country is concerned.'" *Mezei*, 345 U.S. at 212 (quoting *Knauff*, 338 U.S. at 544). The Court went on to determine whether Mezei could be detained indefinitely on Ellis Island, concluding that Mezei was not deprived of "any statutory or constitutional right." 345 U.S. at 215-216.

Although dealing with different issues not applicable here, in *Dep't of Homeland Sec. v. Thuraissigiam*, the Supreme Court discussed the due process rights of arriving aliens seeking admission. "[A]s to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"591 U.S. 103, 138 (2020) (quoting *Nishimura Ekiu v. U.S.*, 142 U.S. 651, 660 (1892)). This is illustrative of the enduring authority of *Mezei*, although the facts of *Thuraissigiam* were limited to a challenge to the admission decision, and were so disconnected from detention that the *Thuraissigiam* court found no basis for habeas jurisdiction, and the decision contains no language extending its holding beyond the admission decision.

In *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (habeas challenge to post-removal order detention)*,* the Court distinguished *Mezei* in finding a right to a detention hearing for aliens post-removal order. The Court discussed Mezei's status as an "arriving alien" deemed "stopped at the border." *Zadvydas*, 533 U.S. at 693-694 ("this Court's …rejection of his challenge to continued detention rested upon a basic territorial distinction," *i.e.*, his detention on Ellis Island was not a "landing") (citing *Mezei,* 345 U.S. at 215). The *Zadvydas* Court held that, to avoid a constitutional violation, the statute would be construed such that  post-removal order detention without a bond hearing was limited, and created a six-month window in which continued detention was presumptively constitution. In *Xi v. U.S. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002), the Ninth Circuit recognized *Mezei* describes due process rights of arriving aliens regarding detention, but found *Zadvydas*'s constitutional construction of § 1231(a)(6) to apply to all post-removal order aliens,

including arriving aliens.

Of course, here, Petitioner is not being detained post-removal order pursuant to § 1231(a)(6). Rather, his removal is still being adjudicated with the BIA. Thus his current detention is pursuant to 8 U.S.C. § 1225(b) not § 1231(a)(6). Accordingly, the statutory provision construed by *Zadvydas*, and applied in *Xi*, has no application to Petitioner.

Indeed, in *Jennings* the Court declined to extend *Zadvydas* to an inadmissible alien, detained under § 1225 because: (1) detention under § 1225(b) has a definite term (completion of proceedings); (2) the detention is statutorily mandated, rather than permissive, and thus not ambiguous; and (3) unlike § 1231(a)(6) detention, detention under § 1225(b) is subject to exceptions, namely § 1182(b)(5). *Jennings*, 583 U.S. at 299-301. (The *Jennings* Court reached similar conclusions about detention under § 1226. *Id.* at 303-306.) Thus the Court found no opportunity to apply the constitutional avoidance canon employed in *Zadvydas* to pre-removal period detention

The undersigned is aware of various arguments to the contrary.

For example, in *Rodriguez v. Robbins* ("Rodriguez II"), 715 F.3d 1127 (9th Cir. 2013), the Ninth Circuit addressed in a class action the concerns that prolonged detention under §§ 1225(b) and 1226(c) without a bond hearing would be "constitutionally doubtful," and thus construed the statutes to require bond hearings after six months. But that case was reversed by the Supreme Court in *Jennings,* finding unsupportable the Ninth Circuit's attempts to employ "constitutional avoidance" to write in limitations on detention under those sections, and remanding for further proceedings on the underlying constitutional claims. *Jennings*, 583 U.S. at 312. Moreover, in so doing, the Court recognized that "*some* members of the certified class may not be entitled to bond hearings as a constitutional matter," and cited to *Mezei,* and cited portions of Rodriguez II and III where the Ninth Circuit had already acknowledged such a limitation citing *Mezei*. *Id.* at 313.

Eventually, in *Rodriguez v. Marin* ("Rodriguez IV"), 909 F.3d 252 (9th Cir. 2018) the Ninth Circuit observed:

- 5 -

We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted). As Justice Breyer wrote in *Rodriguez*,

> The Fifth Amendment says that "[n]o person shall be ... deprived of life, liberty, or property without due process of law." An alien is a "person." To hold him without bail is to deprive him of bodily "liberty." And, where there is no bail proceeding, there has been no bail-related "process" at all. The Due Process Clause—itself reflecting the language of the Magna Carta—prevents arbitrary detention.

138 S.Ct. at 861 (Breyer, J., dissenting) (alteration in original) (citations omitted).

*Rodriguez IV*, 909 F.3d at 256–57 (9th Cir. 2018).   But the Ninth Circuit did not revisit the *Mezei* issue.   In addressing a call to impose bond mandates under § 1226, Judge Bumatay of the Ninth Circuit addressed the above dicta from *Rodriguez IV*, and observed:

> Absent any allegation that the extended detention here is unrelated to an immigration purpose, the mere fact that detention is "prolonged" doesn't alter the statutory framework. Indeed, in our circuit, the median processing time for an immigration case to reach a merits determination is 39 months. Does that mean that any immigration proceeding appealed in the Ninth Circuit would automatically invalidate mandatory detention under § 1226(c)? Why should our delays in processing cases impact Congress's design? And dicta from *Rodriguez v. Marin* isn't a basis to rule otherwise. First, the *Rodriguez* order was written after the Supreme Court expressly rejected our view that immigration statutes must allow for individualized bond hearings after detentions become prolonged. 909 F.3d at 255. Second, *Rodriguez's* musings were mainly justified by a criminal law ruling. *Id*. at 256–57 (quoting *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). But that's irrelevant when it comes to immigration law. *See Demore*, 538 U.S. at 521, 123 S.Ct. 1708. Third, *Rodriguez* cites *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), for the proposition that "[c]ivil detention" violates due process outside of "certain special and narrow nonpunitive circumstances." *Rodriguez*, 909 F.3d at 257 (simplified). But *Zadvydas* only holds that immigration detention must "serve its purported immigration purpose," *Demore*, 538 U.S. at 526, 123 S.Ct. 1708, and there is no argument that the detention of criminal aliens serves no immigration purpose. Finally, *Rodriguez* quotes at length Justice Breyer's dissenting opinion in *Jennings v.*

> *Rodriguez*, 583 U.S. 281, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). *Rodriguez*, 909 F.3d at 257 (quoting *Jennings*, 583 U.S. at 330, 138 S.Ct. 830) (Breyer, J., dissenting). But respectfully, a dissenting view is no reason to upset congressional will.
>
> In contrast, *Rodriguez* ignored the long history of deference to the political branches in administering the immigration system. *See Demore*, 538 U.S. at 538–40, 123 S.Ct. 1708 (O'Connor, J., concurring); *Rodriguez Diaz*, 53 F.4th at 1215–18 (Bumatay, J., concurring). Thus, no extra bond hearing was due here.

*Martinez v. Clark*, 124 F.4th 775, 788 (9th Cir. 2024) (Bumatay, J., concurring).

In sum, neither the Supreme Court nor the Ninth Circuit have deviated from *Mezei*'s limitation on the due process rights of admission-seeking aliens to be released from detention under § 1225(b). *Cf. Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995) (finding no constitutional limitation on prolonged detention of excludable aliens, relying in part on *Mezei*).

The undersigned is aware that other district judges around the country, in the Ninth Circuit and even in this District have reached the opposite conclusion. *See e.g.*, *Avakian v. Cantu*, CV-26-00104-PHX-SHD-CDB, Report and Recommendation, Doc. 17 at 18-19 (D.Ariz. 2026), adopted 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (detailing cases).

But at least some judges in this District have found no due process limitation on detention under § 1225(b). *See e.g.*, *Ibarra-Perez v. Howard*, CV-20-0739-PHX-DWL, 468 F. Supp. 3d 1156, 1177 (D. Ariz. 2020) (finding no limitation on detention of admission-seeking alien during removal proceedings); *Munoz v. Bondi*, CV-25-02951-PHX-MTL, 2026 WL 380610, at *1 (D. Ariz. Feb. 11, 2026) (same, citing *Thuraissigiam*'s reference to rights limited to those provided by statute); *Korneva v. Rokosky*, CV-26-01505-PHX-MTL, 2026 WL 851591, at *1 (D. Ariz. Mar. 11, 2026) (same). *Cf. Avakian v. Cantu*, CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (finding opposition to claim of due process violation from prolonged detention under § 1225(b) waived by failure to raise in response). The undersigned finds these decisions persuasive.

Accordingly, the undesigned concludes that Petitioner has no due process right to

release on any basis from his current detention under § 1225(b),[2] except as provided by Congress, *e.g.,* under 8 U.S.C. § 1182(d)(5).  Thus, the Court need not employ any due process analyses to determine whether other facts of Petitioner's case justify release. Therefore, the Petition must be denied.

## C.  CONDITIONS CONCERNS

Petitioner has asserted various concerns about the conditions of his confinement, including its prison-like setting, with food concerns and limited medical care.  The undersigned is also aware that some district court decisions have focused on various conditions of confinement as part of an analysis whether detention under § 1225 can survive a due process analysis.  *See e.g.  Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019).  But these generally depend on the determination that the due process rights are not controlled by the holding of *Mezei* and its progeny, but rather by the *dicta* in *Rodriguez IV*.  For the reasons discussed hereinabove, the undersigned is not convinced that *Mezei* does not control.

To the extent that Petitioner simply seeks relief from his conditions for confinement, his remedy lies in a civil proceeding for injunctive relief or, perhaps, damages, but not in habeas.  *See Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023) (habeas not proper means to address COVID-19 concerns of prisoners).

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** Petitioner's Petition for Writ of Habeas Corpus (Doc.  1) be **DENIED**.

## V.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

---

[2] When Petitioner has a final order of removal, and his detention shifts to § 1231(a)(6), the limitations in *Xi* may apply to afford him a right to a bond hearing.

Appellate Procedure, should not be filed until entry of the district court's judgment.

However, pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: June 3, 2026

26-2303r RR 26 06 02 on HC.docx

James F. Metcalf
United States Magistrate Judge

- 9 -